John J. Bowers
SECURITIES AND EXCHANGE COMISSION
100 F Street, NE
Washington, D.C. 20549
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | 18-CV-_____ (____) |
| **- against -** | **COMPLAINT** |
| **GORDON J. COBURN and STEVEN E. SCHWARTZ,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

Plaintiff United States Securities and Exchange Commission (the "Commission" or the "SEC"), 100 F Street, N.E., Washington, DC 20549, alleges as follows against the following Defendants, whose names and last known addresses are set forth below:

a. Gordon J. Coburn – 141 East Meadow Drive #5B, Vail, Colorado 81657; and

b. Steven E. Schwartz - 3 Roger Drive, Greenwich, Connecticut 06831.

### SUMMARY

1.      This action arises from violations of the Foreign Corrupt Practices Act of 1977 (the "FCPA") by defendants Gordon J. Coburn ("Coburn"), the former president of Cognizant Technology Solutions Corporation ("Cognizant"), and Steven E. Schwartz ("Schwartz"), the former Chief Legal Officer of Cognizant.

2.      In April 2014, Coburn and Schwartz authorized a contractor ("Contracting Firm") to pay a $2 million bribe on Cognizant's behalf to a senior government official in the

Indian state of Tamil Nadu (the "Government Official") with influence over the issuance of planning and building permits to obtain a required planning permit for construction of Cognizant's KITS Campus in Chennai, the largest city in Tamil Nadu.

3.      In order to secure the benefits sought by Cognizant, Coburn also corruptly promised and agreed to pay an additional $500,000 to Contracting Firm for paying the bribe.

4.      In order to conceal the payments associated with the bribe, Coburn and Schwartz approved a plan by Cognizant to reimburse Contracting Firm $2 million for the bribe, and Coburn agreed to pay Contracting Firm an additional $500,000. Coburn also authorized the creation and payment of fraudulent change orders that would artificially inflate the amount due Contracting Firm in connection with construction of the KITS Campus.

5.      In March 2015, Coburn approved the funds for the final invoice from Contracting Firm that was based on the fraudulent change orders altered by Cognizant to disguise Cognizant's reimbursement of $2 million to Contracting Firm for the bribe and payment of $500,000 to Contracting Firm for paying the bribe. Cognizant India, a wholly-owned subsidiary of Cognizant, paid the $2.5 million total amount to Contracting Firm in installments from its bank accounts in India between March 2015 and January 2016.

6.      Coburn and Schwartz caused Cognizant to make the $2 million corrupt payment to Contracting Firm through Cognizant India with the knowledge, the firm belief, or under circumstances that made it substantially certain that (1) the money paid by Cognizant India to Contracting Firm on Cognizant's behalf was to reimburse Contracting Firm for the bribe payment to the Government Official to improperly influence the official to authorize the issuance of a planning permit for Cognizant's KITS Campus in Chennai, and (2) in

return for the $2 million payment, the Government Official would approve the issuance of a planning permit for Cognizant's KITS Campus in Chennai that would allow construction of the facility to be completed and the facility to be occupied.

7.      Coburn caused Cognizant to make the additional $500,000 corrupt payment to Contracting Firm through Cognizant India with the knowledge, the firm belief, or under circumstances that made it substantially certain that the money paid by Cognizant India to Contracting Firm on Cognizant's behalf was an additional payment to Contracting Firm for paying the bribe to the Government Official.

8.      Coburn and Schwartz also understood that the $2 million payment to Contracting Firm would be falsely recorded in Cognizant India's books and records and, in turn, would be falsely recorded in Cognizant's books and records as costs for *bona fide* construction services or materials under Cognizant's contract for construction of the KITS Campus, and Coburn understood that the $500,000 additional payment to Contracting Firm would also be falsely recorded in Cognizant India's books and records and, in turn, would be falsely recorded in Cognizant's books and records.

9.      Coburn further understood that the fraudulent change orders disguised reimbursement of the $2 million bribe and payment of an additional $500,000 to Contracting Firm for paying the bribe through a series of line items that Cognizant had at first rejected in negotiating change orders with Contracting Firm, and that the amounts paid by Cognizant for these line items did not in fact represent payment for *bona fide* services or materials that were required under the relevant construction contracts. Coburn approved this approach.

3

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

11.      Venue in this District is proper pursuant to Section 27 of the Exchange Act because acts or transactions constituting federal securities law violations occurred within the District of New Jersey.

12.      Defendants, directly or indirectly, made use of the mails and of the means and instrumentalities of interstate commerce in furtherance of the acts, practices and courses of business described herein.

13.      At the time of the violations, Cognizant's securities were publicly traded on the NASDAQ national exchange and registered with the Commission pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l].   Cognizant was an issuer of securities in the United States and filed reports on Form 10-K with the Commission pursuant to Section 13 of the Exchange Act [15 U.S.C. § 78m].

## DEFENDANTS

14.      **Gordon J. Coburn,** a U.S. citizen residing in Colorado, was president of Cognizant from 2012 until September 2016. Prior to his appointment as the company's president, Coburn was Cognizant's Chief Financial Officer for approximately fourteen years. After he became Cognizant's president, Coburn maintained oversight of Cognizant's capacity planning and facility development, including the oversight and review of payments related to capital expenditures.

15.      **Steven E. Schwartz,** a U.S. citizen residing in Connecticut, was Cognizant's

General Counsel and Secretary from 2007 through November 2013, and served as the company's Executive Vice President and Chief Legal and Corporate Affairs Officer from December 2013 through November 2016. In this role, Schwartz had responsibility for Cognizant's global legal teams, its global government affairs efforts and the company's global security team. Cognizant's compliance function reported to Schwartz during the relevant period.

## OTHER RELEVANT PERSONS AND ENTITIES

16.     **Cognizant** is a New Jersey corporation headquartered in Teaneck, New Jersey. Throughout the relevant period its common stock was registered with the Commission under Exchange Act Section 12(b) and publicly traded on NASDAQ (symbol: CTSH). Cognizant files annual and quarterly reports under Exchange Act Section 13. Although it operates in several countries, the majority of Cognizant's operations are conducted in India through its largest subsidiary, Cognizant Technology Solutions India Private Limited ("Cognizant India").

17.     **Cognizant India** is an Indian corporation and a wholly-owned subsidiary of Cognizant. During the relevant period, Cognizant India's books, records, and financial accounts were consolidated into Cognizant's books and records and reported on Cognizant's financial statements.

18.     **Operations Officer**, an Indian national and resident, served as Chief Operating Officer for Cognizant based in India until 2016.

19.     **Real Estate Officer,** an Indian national and resident, served in Cognizant India's corporate workplace function until 2017, and had a direct role in managing construction projects for Cognizant in India, including the facility constructed in Chennai.

20.     **Contracting Firm** is a multinational engineering and construction firm based in India. It is publicly traded on exchanges in India but its securities are not registered with the

Commission.

21.      The **Chennai Metro Development Authority** is the planning agency for the Chennai Metropolitan Area in Tamil Nadu. The Chennai Metro Development Authority issues planning and building permits for major developments in the Chennai Metropolitan Area, a designated area within Tamil Nadu.

22.      The **Government Official** was, during the relevant period, a government official in the Indian state of Tamil Nadu with influence over, *inter alia*, the issuance of planning and building permits by the Chennai Metro Development Authority, and was a "foreign official" within the meaning of the FCPA.

## FACTUAL ALLEGATIONS

### A.    FCPA Violations

23.      Cognizant is a global provider of information technology and business process services. Cognizant uses skilled workers in India to provide technical and back office support for companies in the United States and Western Europe.

24.      Cognizant's KITS Campus is the largest company-owned facility in India, encompassing 2.7 million square feet with a capacity for 17,500 employees. Cognizant engaged Contracting Firm to build the facility and obtain all necessary government permits.

25.      Construction of the KITS Campus began in 2011, prior to the application for or issuance of a required planning permit that would allow construction to be completed and the facility to be occupied. On or about February 7, 2013, Contracting Firm applied for the planning permit on Cognizant's behalf.

26.      In early 2014, Real Estate Officer learned that the Government Official had made a $2 million bribe demand to Contracting Firm as a condition for approving the issuance of

the planning permit. Real Estate Officer passed the information along to his supervisor, Operations Officer.

27.     On April 21 and 22, 2014, Coburn and Schwartz participated in a video conference from the United States, with Real Estate Officer and Operations Officer participating from India, to discuss the bribe demand. Real Estate Officer described the bribe demand and asked Coburn and Schwartz for guidance on how to proceed.

28.     Real Estate Officer suggested that Contracting Firm could make the bribe payment on Cognizant's behalf. Coburn and Schwartz authorized payment of $2 million to Contracting Firm to pay the bribe demanded by the Government Official.

29.     Real Estate Officer also suggested that the illicit payments to Contracting Firm could be made through a series of change orders that artificially increased payments to Contracting Firm related to the KITS Campus construction contract.

30.     Schwartz and Coburn approved this method of payment, and Real Estate Officer was tasked with executing the scheme.

31.     In order to persuade Contracting Firm to make the bribe payment on Cognizant's behalf, Coburn directed Real Estate Officer to inform Contracting Firm that Cognizant would withhold future payments related to the KITS Campus construction contract if Contracting Firm resisted paying the bribe. Contracting Firm ultimately yielded to Cognizant's demand, as directed by Coburn, and made the bribe payment through a consultant in late May or early June 2014. Coburn later authorized payment of an additional $500,000 to Contracting Firm for paying the bribe.

32.     On or about May 20, 2014, Coburn received an email update from Real Estate Officer regarding progress made by Contracting Firm on the approval process for the KITS

Campus, including retention of a consultant by Contracting Firm to process the approval. Shortly thereafter, Coburn authorized release of $7 million from the $17 million in funds withheld from Contracting Firm to ensure their payment of the bribe.

33.     On or about June 16, 2014, Coburn sought a verbal update from Operations Officer regarding the status of the approval process for the KITS Campus, and discouraged further use of email to discuss the issue.

34.     On or about June 30, 2014, Coburn and Schwartz received an email forwarding a "Government Order" approving the issuance of the planning permit. Shortly thereafter, on or about July 1, 2014, Coburn authorized release of $5 million of the funds withheld from Contracting Firm pending approval of the planning permit for the KITS Campus.

35.     On or about November 5, 2014, as a result of the corrupt payment from Contracting Firm on Cognizant's behalf, the Chennai Metro Development Authority issued to Cognizant the required planning permit for the KITS Campus, thereby allowing completion of construction and occupancy of the facility. Issuance of the planning permit without further delay allowed Cognizant to avoid costs that it would have incurred in leasing facilities if the permit was not issued and the KITS Campus could not be occupied.

36.     The $2 million bribe payment to the Government Official was not a payment to expedite or secure the performance of a routine governmental action because: (1) Cognizant and Contracting Firm had not followed the standard procedure to receive the required planning permit from the Chennai Metro Development Authority; (2) the bribe payment was demanded by and made to the Government Official, rather than the Chennai Metro Development Authority, the agency that issued the permit; (3) the Government Official exercised discretion in influencing the Chennai Metro Development Authority to issue the permit; and (4) the amount of the bribe

demand and the bribe payment far exceeded any routine fee associated with an application for a planning or building permit issued by the Chennai Metro Development Authority.

**B.    Concealment of the Bribe Through Fraudulent Change Orders**

37.    As discussed during the video conference calls, Cognizant concealed the $2 million bribe reimbursement and the additional $500,000 payment to Contracting Firm through a series of fraudulent change orders submitted by Contracting Firm and approved by Coburn during the completion of the KITS Campus.

38.    In order to disguise the illicit payments to Contracting Firm, approximately $2.5 million was added to a document called the "Variations List Discussion Document" that listed change orders incorporated in the final construction of the KITS Campus. The initial version of the document, circulated as an attachment to an email on or about October 29, 2014, contained a line item with a description "Approvals/Campus Regularisation" that included the $2.5 million to be paid by Cognizant to Contracting Firm. A subsequent version of the document, circulated as an attachment to an email on or about November 12, 2014, contained a line item in the same amount with a description "Statutory Approvals."

39.    Including a line item for Statutory Approvals in the amount of $2.5 million was deemed likely by Real Estate Officer and Coburn to raise a red flag and invite further inquiry by Cognizant's auditors. In subsequent versions of the Variations List Discussion Document, Real Estate Officer selected change order requests from Contracting Firm that Cognizant had previously rejected and retroactively "accepted" them, adjusting the amount of the change orders so that they would include approximately $2.5 million across eleven line items, each of which had previously been rejected.

40.    In or about January 2015, Real Estate Officer informed Coburn of certain of the

line items that were used to conceal Cognizant's payment of the bribe to the Government Official and payment of the additional amount to Contracting Firm for paying the bribe. By email on or about January 15, 2015, the fraudulent change orders and supporting Excel spreadsheets were forwarded to Coburn for approval.

41.     The final version of the Variations List Discussion Document included these eleven previously-rejected line items as part of the plan to provide a payment to the Contracting Firm in the amount of the $2 million bribe demanded by the Government Official for issuance of the planning permit for the KITS facility and the additional $500,000 paid to Contracting Firm for paying the bribe.

42.     Coburn informally approved payments based on the Variations List on or about February 3, 2015, and formally approved the payments on or about March 13, 2015.

43.     Cognizant made payments on the approved Variation List to Contracting Firm through Cognizant India in installments between March 2015 and January 2016.

**C.     Books and Records and Internal Controls Violations**

44.     Coburn and Schwartz learned of the $2 million bribe demand made by the Government Official during the course of two video teleconferences in April 2014, and charted the company's course of action. Coburn, with Schwartz's approval, authorized the Cognizant bribery scheme, a part of which included the use of fraudulent change orders to disguise Cognizant's reimbursement of $2 million to Contracting Firm for the bribe payment. They assigned Real Estate Officer the task of implementing the scheme, and Real Estate Officer did as he was directed.

45.     Coburn, having served as Cognizant's CFO and president, and Schwartz, having served as the company's General Counsel, knew and understood that their actions

would cause Cognizant to improperly record the illicit bribe payment in its books and records as *bona fide* construction expenses.

46.     Because Cognizant had previously determined that the line items in question should be rejected, the amounts paid by Cognizant for these line items did not represent payment for *bona fide* services or materials that were required under the relevant construction contracts for the KITS Campus.

47.     Further, as senior executive officers of Cognizant, Coburn and Schwartz's duties included the implementation and enforcement of a sufficient system of internal accounting controls. In contravention of their duties and to circumvent the company's internal accounting controls, Coburn and Schwartz's efforts to conceal the bribery scheme included authorizing the company to use fraudulent change orders to disguise Cognizant's reimbursement of the $2 million bribe, and Coburn authorized payment of an additional $500,000 to Contracting Firm using the same method.

48.     From 2014 through 2016, Coburn certified his adherence to Cognizant's "Core Values and Standards of Business Conduct," which required him to comply with the company's anti-corruption policy, maintain accurate books and records, and comply with all laws, rules and regulations applicable to the company in India and wherever Cognizant conducted business.

49.     From 2014 through 2016, Schwartz also certified his adherence to Cognizant's Core Values and Standards of Business Conduct, which required that he comply with the company's anti-corruption policy, maintain accurate books and records, and comply with all laws, rules and regulations applicable to the company in India and wherever Cognizant conducted business.

50.     By authorizing the bribery scheme, Coburn and Schwartz knew that they would

cause Cognizant to falsely and improperly record the illicit $2 million bribe payment to Contracting Firm in Cognizant's books and records as *bona fide* expenses related to construction of the KITS Campus. Coburn further knew that the bribery scheme would cause Cognizant to falsely and improperly record the payment of the $2 million bribe and the additional $500,000 payment to Contracting Firm in Cognizant's books and records as *bona fide* expenses related to construction of the KITS Campus based on his approval of the fraudulent change orders.

51.     Coburn and Schwartz's authorization of the bribery scheme and the cover-up of illicit payments to Contracting Firm also circumvented and violated Cognizant's ethics provisions and internal accounting controls. Their conduct proceeded unchecked, in part, because they failed to implement sufficient internal accounting controls at Cognizant designed to detect and prevent such misconduct.

**D.     Coburn and Schwartz Lied to Cognizant's Auditor**

52.     In order to conceal the improper payments to Contracting Firm, Coburn and Schwartz made false and misleading statements or omissions to Cognizant's auditor in connection with its audits of the company's financial statements from 2014 through 2016.

53.     Coburn and Schwartz failed to disclose to Cognizant's auditor the scheme to bribe the Government Official for the planning permit, the disguised payments to Contracting Firm, the resulting false books and records of Cognizant, and their intentional circumvention of Cognizant's Code of Ethics and internal accounting controls.

**E.     Coburn Signed False Management Representation Letters**

54.     Between August 2014 and June 2016, Coburn signed management representation letters that were provided to Cognizant's auditor, each of which falsely stated that:

> We acknowledge our responsibility for the design and implementation of programs and controls to provide reasonable assurance that fraud is prevented and detected.

> We have no knowledge of any fraud or suspected fraud affecting the Company involving:  a) Senior management;  b) Management or other employees who have significant roles in internal control over financial reporting; or c) Others where the fraud could have a material effect on the condensed consolidated interim financial statements.
>
> There have been no violations or possible violations of laws or regulations whose effects should be considered for disclosure in the consolidated financial statements or as a basis for recording a loss contingency.

The management representation letters signed by Coburn were provided to Cognizant's auditor during the course of its audit, review and examination of Cognizant's financial information, including Cognizant's financial statements, which information was incorporated by reference or attached to periodic and annual reports filed with the Commission.

55.     Coburn knew at the time he signed the management representation letters that he, with Schwartz's approval, had authorized Cognizant to execute a scheme in 2014 to bribe an Indian government official to authorize the issuance of a required planning permit for the KITS Campus, and that Cognizant had paid an additional amount to Contracting Firm for paying the bribe.

56.     Coburn also knew when he signed the management representation letters that, at his direction, Cognizant had concealed the illicit payments through the creation of fraudulent change orders, resulting in a series of improper payments to Contracting Firm between 2015 and 2016, and that the books, records and accounts of Cognizant were thereby false.

57.     Had Cognizant's auditor known about the scheme to bribe the Government Official for the planning permit, the additional payment to Contracting Firm for paying the bribe, the fraudulent change orders used to disguise the illicit payments to Contracting Firm, and the resulting false information in Cognizant's books and records, the auditor should not have accepted the management representation letters and other representations provided by Coburn,

and should not have provided unqualified audit opinions to accompany Cognizant's annual reports between 2014 and 2016.

**F.     Coburn and Schwartz Executed False or Misleading Subcertifications to Cognizant's Management Representation Letters**

58.     Between July 2014 and January 2016, Coburn and Schwartz made false or misleading statements or omissions in subcertifications to management representation letters in connection with Cognizant's quarterly and annual reports filed with the Commission. Coburn and Schwartz each falsely stated in their respective subcertifications that (1) they had disclosed to Cognizant's CEO and CFO "any known fraud, whether or not material, that involves management or other employees, within my area of responsibility, who have a significant role in the Company's internal controls" and (2) the financial information for each relevant period "does not contain any untrue statement of fact or omit to include a material statement of fact necessary to make such financial information, in light of the circumstances under which such financial information was compiled, not misleading."

59.     Coburn and Schwartz knew, at the time when they executed each subcertification, that they had authorized Cognizant's payment of a bribe to an Indian government official in 2014 through Contracting Firm and the creation of fraudulent change orders to disguise the illicit payment to reimburse Contracting Firm for the bribe, and Coburn knew that he had authorized payment of an additional amount to Contracting Firm for paying the bribe. Coburn and Schwartz also knew that they had approved a plan to conceal the bribery scheme, which necessarily entailed deliberately falsifying Cognizant's books.

60.     Coburn and Schwartz knew that, after they authorized the bribery scheme, Cognizant's supporting documents for the payments that were used to conceal the illicit payments were false because they did not accurately reflect the true purpose of the payments.

They also knew that Cognizant's accounting books and records were thereby rendered false. Neither Coburn nor Schwartz disclosed any of these facts to Cognizant's CEO or CFO. Coburn and Schwartz's false subcertifications were provided to and relied upon by Cognizant's CEO and CFO in signing management representation letters that were given to Cognizant's auditor between June 2014 and January 2016.

### FIRST CLAIM FOR RELIEF

### Coburn and Schwartz Violated
### Section 30A of the Exchange Act

**(Anti-Bribery Provisions of the Foreign Corrupt Practices Act)**

61.     Paragraphs 1 through 43 are realleged and incorporated herein by reference.

62.     Coburn and Schwartz, who were officers, directors, employees, or agents of Cognizant, a U.S. issuer, made use of the mails or other means or instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to foreign officials for the purposes of influencing their acts or decisions, securing an improper advantage, or inducing them to use their influence to assist the issuer in obtaining or retaining business.

63.     By reason of the foregoing, Coburn and Schwartz violated Section 30A of the Exchange Act [15 U.S.C. § 78dd-l].

### SECOND CLAIM FOR RELIEF

### Coburn and Schwartz Aided and Abetted Cognizant's Violation
### of Section 30A of the Exchange Act

**(Anti-Bribery Provisions of the Foreign Corrupt Practices Act)**

64.     Paragraphs 1 through 43 are realleged and incorporated herein by reference.

15

65.     Coburn and Schwartz knowingly or recklessly provided substantial assistance to Cognizant in its violations of, and caused Cognizant to violate, Section 30A of the Exchange Act.

66.     By reason of the foregoing, Coburn and Schwartz violated Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] by aiding and abetting Cognizant's violations of Section 30A of the Exchange Act [15 U.S.C. § 78dd-1].

## THIRD CLAIM FOR RELIEF

### Coburn and Schwartz Aided and Abetted Cognizant's Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act

**(Company Books and Records and Internal Accounting Controls)**

67.     Paragraphs 1 through 60 are realleged and incorporated herein by reference.

68.     Section 13(b)(2)(A) of the Exchange Act requires issuers to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of their assets.

69.     Section 13(b)(2)(B) of the Exchange Act requires issuers to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions are recorded as necessary to allow preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and to maintain accountability for assets.

70.     Coburn and Schwartz knowingly or recklessly provided substantial assistance to Cognizant in its violations of, and caused Cognizant to violate, Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B).

71.     By reason of the foregoing, Coburn and Schwartz violated Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] by aiding and abetting Cognizant's violations of Sections

13(b)(2)(A)  and 13(b)(2)(B) of the Exchange  Act [15 U.S.C. §§ 78m(b)(2)(A) and (B)].

## FOURTH CLAIM FOR RELIEF

### Coburn and Schwartz Violated Section 13(b)(5) of the Exchange Act and Exchange Act Rule 13b2-1

### (Falsifying Books and Records)

72.      Paragraphs 1 through 60 are realleged and incorporated herein by reference.

73.      As described above, Coburn and Schwartz also knowingly falsified, and directly or indirectly caused to be falsified books, records, or accounts of Cognizant, an issuer subject to Section 13(b)(2) of the Exchange Act [15 U.S.C. §78m(b)(2)].  As a result of Coburn and Schwartz's conduct, the books and records of Cognizant falsely recorded the corrupt payments under the fraudulent change orders described above as payments for *bona fide* business services. By authorizing the falsification of invoices and other documents in the case of Coburn and Schwartz, and by subsequently approving the inflated and unjustified invoices in the case of Coburn, Coburn and Schwartz knowingly circumvented Cognizant's internal accounting controls.

74.      By reason of the foregoing, Coburn and Schwartz violated Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Exchange Act Rule 13b2-1 [17 C.F.R. §240.13b2-1].

## FIFTH CLAIM FOR RELIEF

### Coburn and Schwartz Violated Exchange Act Rule 13b2-2

### (False or Misleading Statements in Connection with the Preparation or Filing of Required Documents and Reports)

75.      Paragraphs 1 through 60 are realleged and incorporated herein by reference.

76.      Coburn and Schwartz made or caused to be made materially false or misleading statements or omissions to an accountant or auditor in connection with an audit, review or

examination of Cognizant's financial statements.

77.       Coburn and Schwartz also made or caused to be made materially false or misleading statements or omissions to an accountant in connection with the preparation or filing of documents and reports required to be filed with the Commission.

78.       By reason of the foregoing, Coburn and Schwartz violated Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully asks that this Court:

(a) Permanently restrain and enjoin Defendants Coburn and Schwartz, and their agents, servants, employees, attorneys-in-fact, and assigns and those persons in active concert or participation with them, and each of them, from violating, or aiding and abetting violations of, Sections 30A [15 U.S.C. § 78dd-1], 13(b)(2)(A) [15 U.S.C. § 78m(b)(2)(A)], 13(b)(2)(B) [15 U.S.C. § 78m(b)(2)(B)] and 13(b)(5) [15 U.S.C. § 78m(b)(5)] of the Exchange Act and Rules 13b2-1 [17 C.F.R.§ 240.13b2-l] and 13b2-2 [17 C.F.R. § 240.13b2-2] promulgated thereunder;

(b) Order Defendants Coburn and Schwartz to pay civil money penalties pursuant to Sections 21(d) [15 U.S.C. § 78u(d)] and 32 [15 U.S.C. § 78ff] of the Exchange Act;

(c) Enter an order against Defendants Coburn and Schwartz pursuant to Section 20(e) of the Securities Act and Section 21(d) of the Exchange Act [15 U.S.C. §§ 77t(e) and 78u(d)], prohibiting each of them from acting as an officer or director of any issuer that has a class of securities registered under Section 12 of the Exchange Act [15 U.S.C. §78l] or that is required to file reports by Section 15(d) of the Exchange Act [15 U.S.C. §78o(d)]; and

(d) Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 39 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Dated:  February 15, 2019                Respectfully  submitted,

                                                         */s/John J. Bowers*
                                                         John J. Bowers
                                                         100 F Street, NE
                                                         Washington,  DC 20549-4473
                                                         Telephone:  202-551-4645
                                                         Email:  bowersj@sec.gov

                                                         Charles  E. Cain
                                                         Robert I. Dodge
                                                         Paul W. Sharratt
                                                         Michael  K. Catoe

                                                         COUNSEL FOR PLAINTIFF SECURITIES
                                                         AND EXCHANGE  COMMISSION

## DESIGNATION OF AGENT FOR SERVICE

Pursuant to Local Rule 101.1(f), because Plaintiff Securities and Exchange Commission (the "Commission") does not have an office in this district, the United States Attorney for the District of New Jersey is hereby designated as an alternative to the Commission to receive service of all notices or papers in the captioned action. Therefore, service upon the United States Attorney's Office or its authorized designee:

J. Andrew Ruymann
Chief, Civil Division
United States Attorney's Office for the District of New Jersey
402 E. State Street, Room 430
Trenton, NJ 08608

shall constitute service upon the Commission for purposes of this action.

Dated: February 15, 2019     Respectfully submitted,

/s/John J. Bowers
John J. Bowers
100 F Street, NE
Washington, DC 20549-4473
Telephone: 202-551-4645
Email: bowersj@sec.gov

COUNSEL FOR PLAINTIFF SECURITIES
AND EXCHANGE COMMISSION

## <u>NOTICE OF RELATED ACTION</u>

Pursuant to Rule 40.1(c) of the Local Rules for the District of New Jersey, Plaintiff Securities and Exchange Commission (the "Commission"), hereby notifies this Honorable Court of the existence of a related case currently pending in this district before Hon. Kevin McNulty: *U.S. v. Gordon J. Coburn and Steven Schwartz*, 19-CRIM-120 (the "Criminal Action"). The Criminal Action, which was filed on February 14, 2019 and unsealed on February 15, 2019, concerns related issues of law and fact arising from the same transaction or conduct.

Given the overlapping nature of the allegations in the Criminal Action and the claims asserted in this action, assigning these actions to a single district judge will likely conserve judicial resources.

Dated: February 15, 2019    Respectfully submitted,

            */s/John J. Bowers*
            John J. Bowers
            100 F Street, NE
            Washington, DC 20549-4473
            Telephone: 202-551-4645
            Email: *bowersj@sec.gov*

            COUNSEL FOR PLAINTIFF SECURITIES
            AND EXCHANGE COMMISSION