UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|                                              |   |                                    |
|----------------------------------------------|---|------------------------------------|
| SECURITIES AND EXCHANGE COMMISSION,          | : | Civil Action No. 19-5820 (KM) (MAH) |
| Plaintiff,                                   | : |                                    |
| v.                                           | : |                                    |
| GORDON J. COBURN and STEVEN E. SCHWARTZ,     | : |                                    |
| Defendants.                                  | : | OPINION                            |

## I. INTRODUCTION

This matter comes before the Court on the United States' Motion to Intervene and for a Stay pending the conclusion of criminal proceedings in *United States v. Gordon Coburn and Steven Schwartz*, Crim. No. 19-120 (KM) (the "Criminal Case"). The Court has considered the parties' briefing, and heard oral argument on November 8, 2019. For the reasons set forth herein, the Court will grant the United States leave to intervene and will stay discovery. If circumstances change, either party may move before this Court to lift or modify the stay. Additionally, the Court will require that the parties submit a joint status report on or before May 15, 2019, to allow the Court to determine whether the stay should be revisited.

## II. BACKGROUND

Defendants Gordon J. Coburn and Steven E. Schwartz are, respectively, the former President and Chief Legal Officer of Cognizant Technology Solutions Corporation ("Cognizant"), a corporation headquartered in Teaneck, New Jersey. Compl. ¶¶ 14-16, D.E. 1. Cognizant's publicly traded common stock is registered with the Securities and Exchange Commission ("SEC"). *Id.* ¶ 13. "Cognizant is a global provider of information technology and business process

services" that utilizes "skilled workers in India to provide technical and back office support for companies in the United States and Western Europe." *Id.* ¶ 23. "Although it operates in several countries, the majority of Cognizant's operations are conducted in India through its largest subsidiary, Cognizant Technology Solutions India Private Limited ("Cognizant India")." *Id.* ¶ 16.

On February 14, 2019, a federal grand jury returned a twelve-count indictment charging Defendants with violations of the Foreign Corrupt Practices Act of 1977 ("FCPA") and the Securities Exchange Act of 1934 ("Exchange Act") in connection with an alleged bribe to obtain permits to construct a facility in India. *See generally United States v. Coburn*, No. 19-cr-120, Indictment, D.E. 1. The next day, the SEC filed this civil action pertaining to the same alleged scheme. *See SEC v. Coburn*, No. 19-5820, Complaint, ¶¶ 1-9, D.E. 1. Specifically, the SEC alleges that, in April 2014, Defendants "authorized a contractor ("Contracting Firm") to pay a $2 million bribe on Cognizant's behalf to a senior government official in the Indian state of Tamil Nadu (the "Government Official") with influence over the issuance of planning and building permits to obtain a required planning permit for construction of Cognizant's KITS Campus in Chennai . . . ." *Id.* ¶ 2; *see also id.* ¶¶ 24-31. The SEC contends that Coburn "corruptly promised and agreed to pay an additional $500,000 to Contracting Firm for paying the bribe." *Id.* ¶ 3.

Cognizant India allegedly "paid the $2.5 million total amount to Contracting Firm in installments from its bank accounts in India between March 2015 and January 2016." *Id.* ¶ 5. According to the SEC, Defendants attempted to conceal the unlawful payments through fraudulent change orders associated with the construction of the KITS Campus, which they knowingly failed to disclose to Cognizant's auditor. *Id.* ¶¶ 4, 38-43, 52-57. During the relevant time period, Defendants also purportedly made misrepresentations in subcertifications to management representation letters. *Id.* ¶ 58-60. The SEC further avers that

> Coburn and Schwartz's authorization of the bribery scheme and the cover-up of illicit payments to Contracting Firm also circumvented and violated Cognizant's ethics provisions and internal accounting controls. Their conduct proceeded unchecked, in part, because they failed to implement sufficient internal accounting controls at Cognizant designed to detect and prevent such misconduct.

*Id.* ¶ 51.

In short, the SEC's civil complaint alleges that Defendants understood that: (1) Cognizant's bribe to Contracting Firm was to reimburse the firm for the $2 million payment to the Government Official to assist in the obtainment of necessary building permits; (2) the $500,000 payment to Contracting Firm was as an additional payment for its role in the scheme; (3) the two payments would be falsely recorded in the books and records of Cognizant and Cognizant India as fraudulent change orders that did not in fact represent *bona fide* services or materials under the relevant construction contracts; and (4) their statements made to Cognizant's auditors and in connection with management representation letters were false. *Id.* ¶¶ 6-9, 45-47, 52-60.

The SEC now seeks to hold Defendants liable for violating and aiding and abetting violations of the FCPA's anti-bribery provisions, 15 U.S.C. § 78dd-1; aiding and abetting violations of Sections 13(B)(2)(A) and 13(B)(2)(B) of the Exchange Act, 15 U.S.C. §§ 78m(b)(2)(A) and (B); and violating Section 13(b)(5) of the Exchange Act and Exchange Act Rules 13b2-1 and -2, 15 U.S.C. § 78m(b)(5), 17 C.F.R. § 240.13b2-1, -2. *See id.* ¶¶ 61-78. The SEC requests both the imposition of monetary penalties and injunctive relief.

The United States has moved for leave to intervene into this action under Federal Rule of Civil Procedure 24, and requests this Court stay all proceedings until the conclusion of the parallel Criminal Case.[1] Defendants oppose the United States' request for a blanket stay of the civil action,

---

[1] No party objects to the United States' request to intervene into this matter. Accordingly, the Court will grant the United States' motion to intervene. *SEC v. Blumberg*, No. 14-4962, Order,

and argue in the alternative that the Government is entitled to, at most, a partial stay. For the reasons that follow, the Court holds that a complete stay of discovery is warranted.

## III. ANALYSIS

"[A] stay of a civil proceeding is an extraordinary remedy and is not favored." *Forrest v. Corzine*, 757 F. Supp. 2d 473, 476 (D.N.J. 2010). That said, "[d]istrict courts possess inherent discretion to stay a proceeding whenever the interests of justice mandate such action." *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 445 (D.N.J. 2014) (internal quotation marks and citation omitted). In the context of parallel civil and criminal proceedings, a stay "may be warranted in certain circumstances." *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998) (citation omitted).

> The factors to be considered in deciding whether to grant a stay include: (1) the extent to which the issues in the criminal and civil cases overlap; (2) the status of the case, including whether the defendants have been indicted; (3) the plaintiffs interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; (4) the private interests of and burden on defendants; (5) the interests of the court; and (6) the public interest.

*SEC v. Fishoff*, No. 15-3725, 2016 WL 1262508, at *3 (D.N.J. Mar. 31, 2016) (quoting *Walsh Sec., Inc.*, 7 F. Supp. 2d at 526-27). The Court will address each of the *Walsh* factors before turning to the propriety of a partial stay of this matter.

### 1. The *Walsh* Factors

#### a. Extent of Overlap in the Criminal and Civil Cases

The most important threshold issue in determining whether to grant the stay stems from the degree to which the issues in the parallel civil and criminal proceedings overlap. *See Fishoff*,

---

D.E. 38, at 2-3, n.3 (June 29, 2015) (granting the United States' motion to intervene where neither party opposed intervention), *aff'd*, Mem. and Order, D.E. 72 (Mar. 8, 2016).

2016 WL 1262508, at *3; *Walsh Sec., Inc.*, 7 F. Supp. 2d at 527. This Court finds the first factor weighs in favor of a stay because the two proceedings involve the same overall scheme and putative violations of the same statutes. Indeed, the parties do not dispute the overlap between the two proceedings. *See* Def. Coburn's Opp'n Br., at 7, D.E. 31; Def. Schwartz's Opp'n Br., at 10, D.E. 32; United States' Reply Br., at 4, D.E. 35

Defendants contend that, notwithstanding the overlap, the United States has failed to meet its burden for establishing the necessity of a stay, *i.e.* actual hardship beyond the need to engage in discovery in parallel proceedings. Def. Coburn's Opp'n Br., at 3; Def. Schwartz's Opp'n Br., at 6. Defendants rely on several out-of-district cases finding that that the Government's exposure to broader discovery in a parallel civil action is insufficient to warrant a stay. Def. Coburn's Opp'n Br., at 4-6, 8-9 (citing *SEC v. Kanodia*, 153 F. Supp. 3d 478 (D. Mass. 2015); *SEC v. Sandifur*, No. 05-1631, 2006 WL 3692611 (W.D. Wash. Dec. 11, 2006)); Def. Schwartz's Opp'n Br., at 3-4, 10-12 (collecting cases). According to Mr. Schwartz, because of the "tactical decision to coordinate with the SEC and to bring the Criminal and SEC Cases against [Defendants] simultaneously, the government should not be permitted to avoid the consequences of the actions now proceeding simultaneously, including with respect to civil discovery." Def. Schwartz's Opp'n Br., at 11-12 (footnote omitted).

The Court respectfully disagrees. The SEC has an independent duty to enforce securities laws separate from the Government's interest in a criminal prosecution. *See Blumberg*, No. 14-4962, Order at 3, D.E. 38 ("Upon discovering securities violations, it is the SEC's responsibility to bring civil enforcement actions and to seek injunctive relief to prevent continuing violations."); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070-71 (C.D. Cal. 2008) (finding that the defendant's argument that the Government's request for a stay is inconsistent with the institution of parallel

proceedings "overlooks the important purpose of the SEC to protect the integrity of the public markets and ensure truthful corporate disclosures"). This Court declines to subscribe to the view that the Government's decision to seek civil remedies in addition to obtaining a criminal conviction should be subject to heightened scrutiny. Nor does the Court find that the coordinated enforcement of civil and criminal laws obviates any independent justification to stay the civil proceeding in favor of the criminal proceeding.

The Court's primary concerns at the threshold when faced with parallel civil and criminal cases are to correctly forecast whether the parties will be engaging in duplicative discovery and motion practice; whether the constitutional overlay to the criminal prosecutions will impede civil discovery; and whether the resolution of the Criminal Case will substantially moot, clarify, or be dispositive of issues in the civil matter. *See United States v. Mellon Bank, N. A.*, 545 F.2d 869, 873 (3d Cir. 1976); *In re Valeant Pharm. Int'l, Inc.*, No. 16-3087, 2017 WL 3429342, at *2 (D.N.J. Aug. 9, 2017) (stating that first *Walsh* weighs in favor of stay where "the same conduct . . . will be relevant in both cases, and that the civil and criminal cases are likely to share common witnesses and documents." (quoting *United States v. All Articles of Other–Sonic Gneric Ultrasound Transmission Gel*, No. 12–2264, 2013 WL 1285413, at *2 (D.N.J. Mar. 27, 2013)). Hence, where there is substantial overlap between the core allegations in the civil and criminal complaints, courts in this district are inclined to stay discovery to preserve judicial resources and to avoid enmeshing the Court in discovery disputes that are significantly complicated by the dual litigation tracks. *See, e.g.*, *Fishoff*, 2016 WL 1262508, at *5; *Blumberg*, No. 14-4962, Mem. and Order at 5, D.E. 72.

    b.    **Status of the Case**

The second *Walsh* factor concerns the status of the criminal matter. "The strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is

returned." *Walsh Sec. Inc.*, 7 F. Supp. 2d at 527. "The potential for self-incrimination is greatest during this stage, and the potential harm to civil litigants arising from delaying them is reduced due to the promise of fairly quick resolution of the criminal case under the Speedy Trial Act." *Id.* Given that the proceedings in the Criminal Case are well underway at this point, the Court also finds that this factor weighs in favor of a stay.

Pursuant to the October 16, 2019, Scheduling Order in the Criminal Case, the District Court will hold oral argument on any pretrial motion challenging the indictment on January 28, 2020, and any discovery motion on March 24, 2020. *United States v. Coburn*, No. 19-cr-120, Scheduling Order, D.E. 55 The District Court has also "set a trial control date of September 2020." *Id.* Permitting discovery to proceed in the Civil Action runs the risk of interfering with those dates. Relatedly, the risk of discovery disputes in this action arising from Defendants' possible invocation of the act-of-production privilege in response to Government document-production requests, and the attorney-client privilege in light of Schwartz's former position as chief legal officer, may "enmesh the court in constant privilege questions." *Blumberg*, No. 14-4962, Mem. and Order at 5, D.E. 72; *see also Walsh Sec., Inc.*, 7 F. Supp. 2d. at 527-28 (noting that debate regarding what type of inquiries in discovery would implicate the Fifth Amendment "foreshadow[s] the many disagreements that will undoubtedly arise to complicate interrogatory discovery"). As a result, "[i]nconsistent rulings, too, would pose a danger." *Blumberg*, No. 14-4962, Mem. and Order at 5, D.E. 72

The Court is also cognizant of the fact that self-incrimination issues may be heightened on the eve of the criminal trial, thereby interfering with the fair exchange discovery in the civil action. *See Blumberg*, No. 14-4962, Mem. and Order, at 5, D.E. 72 (finding that defendant's proposal to stay discovery only as to persons who could validly invoke the self-incrimination privilege "would

be unfairly one-sided, in that [defendant] would be free to circumvent limitations on discovery in criminal cases while shielding himself and his allies"); *Nicholas*, 569 F. Supp. 2d at 1070 ("The specter of parties and witnesses invoking their Fifth Amendment rights would render civil discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the Defendants."). The Court is not inclined to adopt a wait-and-see approach by permitting discovery to proceed, only to have Defendants effectively shield themselves from their obligations given the parallel proceeding.

### c. **Prejudice to Plaintiff**

The SEC does not oppose the request for a stay of the civil action. Accordingly, this factor weighs in favor of granting a stay. *See Fishoff*, 2016 WL 1262508, at *4.

### d. **Burden on the Defendants**

Both Defendants emphasize the significant reputational harm inflicted by the Government's allegations, as well as the risk that relevant evidence will disappear pending the resolution of the criminal matter. Def. Coburn's Opp'n Br., at 9-10; Def. Schwartz's Opp'n Br., 14-17. Although the Court understands Defendants' concerns, this Court is unpersuaded that the putative prejudice suffered by Defendants outweighs the other *Walsh* factors. First, the Court agrees with the United States that "the discovery process, motion practice and, ultimately, the trial in the Criminal Case all will likely preserve the time and resources of the parties and the Court in the SEC Case." United States' Reply Br. at 11. Having reviewed and tested the parties' respective proofs in the Criminal Case, this Court envisions that streamlined and targeted discovery will follow in the SEC's civil action. For example, the Government has produced "hundreds of thousands of pages of documents" in the Criminal Case. Tr. Oral Arg., Nov. 8, 2019, at 7:7-8.

Accordingly, the parties certainly will not be starting from scratch, or find themselves at a significant disadvantage, in the civil action.

Second, the Court finds the risk that evidence will disappear, or memories will fade, to be speculative at best. The Defendants have raised this as a generic concern, without providing any specific risk. *See Blumberg*, No. 14-4962, Mem. and Order, at 4, D.E. 72. To the extent that Defendants are concerned about lost documentation for the civil case, there are two reasons why the Court struggles to attach much weight to this risk. First, as noted above, the United States already has made a substantial document production in the criminal case. Second, all parties in the civil case are subject to Federal Rule of Civil Procedure 37 and Third Circuit precedent regarding preservation of relevant documents. Finally, to the extent that Defendants are concerned with witnesses' memories fading over time, that risk is ameliorated by the fact that the stay is of limited duration, in that it is coextensive with resolution of the criminal charges and subject to the parties' status report due on May 14, 2020. Moreover, Defendants already possess witness statements by virtue of the Government's discovery obligations in the Criminal Case. *See* Tr. Oral Arg., Nov. 8, 2019, at 23:11 to 24:2 (acknowledging that the Government's case against Mr. Schwartz "is based entirely on one witness" for whom the Defense possesses multiple statements produced by the Government).

e. **Interests of the Court**

The Court has a strong interest in judicial efficiency through the management of its caseload. *Walsh Sec. Inc.,* 7 F. Supp. 2d at 528; *see also In re Fine Paper Antitrust Litig.*, 685 F.3d 810, 817 (3d Cir. 1982) ("[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court."). The Court finds judicial economy favors a stay because the Criminal Case may clarify, moot, and refine some issues common to both cases.

Although this Court presides over both the Criminal and Civil cases, the strong potential for duplicative efforts and potential for conflicting rulings weighs in favor of a stay. *See SEC v. Schiff*, No. CIV. 05-4132, 2006 WL 2690266 (D.N.J. Sept 19, 2006) (holding that judicial economy would be best served to the extent that the criminal prosecution would narrow the issues in the civil case). Therefore, in the interest of judicial efficiency and fairness, this factor weighs in favor of a stay.

### f. Public Interest

Generally speaking, "[t]here is no harm to the public interest in granting a stay of the civil case." *Walsh Sec. Inc.*, 7 F. Supp. 2d at 529. On the other hand, a stay benefits the public when the Government is allowed to conduct a complete and unimpeded investigation into alleged criminal activity. *Id.* Defendants do not raise any arguments to distinguish their case from those principles. This factor thus weighs in favor of a stay.

\* \* \*

Having considered the *Walsh* factors in light of the particular circumstances of this case, the Court holds that a stay of discovery is warranted. The Court now addresses Defendants' requests that this Court enter a partial stay in favor of limited discovery.

### 2. Defendants' Requests for a Partial Stay

Messrs. Schwartz and Coburn each advance a different alternative about how limited discovery should proceed in lieu of a complete stay. Coburn submits that he is not opposed to "the entry of a partial stay permitting third-party discovery while precluding discovery from the parties and the Government's cooperating witnesses." Def. Coburn's Opp'n Br., at 2. According to Coburn,

> [i]f the civil matter proceeds with a limited stay, [Coburn] will be able to use this period to seek civil discovery from third parties, including Cognizant and the Contracting Firm, the Indian entity alleged to have paid the bribe. That process is likely to be protracted and complex.

*Id.* at 10. Coburn thus argues that "a stay permitting third-party discovery would permit [him] to seek materials necessary for his civil defense that are likely to prove difficult and time-consuming to obtain, and which may not exist at the conclusion of the criminal case." *Id.* at 12. Schwartz submits that document discovery should nonetheless proceed if the Court is inclined to stay the case. Def. Schwartz's Opp'n Br., at 2. He emphasizes that the Court can avail itself of more limited remedies such as issuing protective orders or evaluating specific objections to discovery requests as they arise. *Id.* at 8.

The Court declines Defendants' suggestions for many of the aforementioned reasons. First, as for Mr. Schwartz's proposal, the Court strains to understand the prejudice he will suffer absent document production in the civil case, given the extensive document production in the criminal case. Beyond that, the Court concludes that the utility of limited discovery in the civil case is greatly outweighed by the risk that it will interfere with the criminal prosecution as set forth above. The Court also remains concerned that discovery would be largely one-sided and replete with privilege disputes that may best be resolved in the Criminal Case.

Furthermore, Defendants' proposals for a limited stay of discovery reveals a shortcoming in their prejudice arguments. On the one hand, Defendants profess concern about witnesses' memories fading over time and, in the case of Mr. Schwartz at least, state that much of the Government's case rests on the testimony of a particular witness. *See* Def. Schwartz's Opp'n Br., at 2. However, neither of Defendants' limited-stay proposals clearly envisions deposing that cooperating witness. Mr. Schwartz proposes that document discovery proceed in the civil case,

while Mr. Coburn urges the Court to allow third-party discovery but exclude discovery from the parties and the Government's cooperating witness.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the United States' motion to intervene and for a stay. If circumstances change, either party may move before this Court to lift or modify the stay. Moreover, the parties will submit, by May 15, 2020, a joint status report. An appropriate order will follow.

*s/ Michael A. Hammer*_____
**United States Magistrate Judge**

Dated: November 14, 2019